# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION

L'SANA DJAHSPORA and MICHELLE
CURTAIN-STEWART, as Personal
Representatives of CINQUE DJAHSPORA,
deceased,

      Plaintiffs,

                               No.1:15-cv-01269-JDT-egb

vs.                                JURY DEMANDED

CITY of JACKSON, TENNESSEE; JERRY
GIST, individually and in his official
Capacity as Mayor of Jackson, Tennessee;
JACKSON TENNESSEE POLICE; CHRISTOPHER
WISER, individually and in his official
capacity as Chief of Jackson Police
Department; RAYMOND BOND, individually
and in his official capacity as Police
Officer; CHRISTIAN BOXLEY; individually
and in his official capacity as Police
Officer; JEHYONATHAN CHILDS, individually
and in his official capacity as Police
Officer; KEN JONES, individually and
in his official capacity as Police Officer,

      Defendants.

## REPORT AND RECOMMENDATION

      Before the Magistrate Judge on referral[1] are three Motions:

Defendants' Motion to Dismiss Certain Claims (D.E. 15),

Defendants' Motion for Summary Judgment (D.E. 20), and

Plaintiffs' Motion to Enter Evidence (D.E. 42). For the

following reasons, the Magistrate Judge recommends that the

District Court grant Defendants' Motion to Dismiss and Motion

---

[1] This case has been referred to the United States Magistrate Judge for
management and for all pretrial matters for determination and/or report and
recommendation as appropriate. (Admin. Order 2013-05, April 29, 2013.)

for Summary Judgment, and deny Plaintiffs' Motion to Enter
Evidence.

## Background

Cinque DJahspora died following an encounter with Officer
Raymond Bond. Complaint at § IV, ¶ 12 (D.E. 1, PageID 6). As a
result of Cinque DJahspora's death, his parents filed this
lawsuit pro se in their capacity as their son's personal
representatives. *Id.* at Introductory Paragraph (PageID 1).
Plaintiffs named as Defendants the City of Jackson, as well as
Mayor Gist, Chief Wiser, Officer Bond, Officer Boxley, Officer
Childs, and Officer Jones, all in their individual and official
capacities. *Id.* at ¶¶ 3-9 (PageID 3-5).

Plaintiffs allege that Officer Bond shot their son, but
they disagree that it was in self-defense. *Id.* at § I, PageID 2
(PageID 2). Plaintiffs allege that Officer Bond's shooting of
their son resulted from the City's policy of lack of supervision
and from the history of the City allowing its officers to
violate its citizens' civil rights. *Id.* Plaintiffs also allege
that the "[C]ity created and maintained an environment where
police officers believed they could use excessive and
unwarranted lethal force and get away with it." *Id.* Further,
according to Plaintiffs, the City's policymakers failed to
"remedy patterns of excessive force . . . despite actual

knowledge . . . thereby tacitly approving and ratifying the type
of misconduct alleged . . .." *Id.* at § V, ¶ 25 (PageID 11).
Plaintiffs claim that the City's policies and procedures
facilitated "the very type of misconduct at issue here by
failing to adequately investigate, punish and discipline . . .."
*Id.* at § 5, ¶ 29 (PageID 11). Plaintiffs accuse the mayor and
the chief of "[a]ctions [that] demonstrate general condoning,
approval, and promotion of the conduct [of] Bond, Boxley, et al.
and helped to perpetuate this environment where police officers
believe they can . . . violate the civil rights of citizens and
escape responsibility . . . ." *Id.* at § I, PageID 2. They also
allege that the mayor and chief "allowed officers to use deadly
force against [their son] when [he] did not pose a . . . threat
. . . ." *Id.* at § V, ¶ 23 (PageID 10).

On December 30, 2015, Defendants moved to dismiss most of
the claims before the Court, and then on January 13, 2016, moved
for summary judgment on the remaining claims. Motion to Dismiss
Certain Claims (D.E. 15, PageID 79-81); Memorandum of Law (D.E.
15-1, PageID 82-97); Bond and Boxley's Summary Judgment Motion
(D.E. 20, PageID 115-116); Memorandum of Law (D.E. 20-1, PageID
117-129). Plaintiffs' responses to these motions were due within
31 days of being served with the motions. L.R. 12.1(b) and L.R.
56.1(b); Fed.R.Civ.P. 5(b)(2)(E) and 6(d). Plaintiffs did not

respond by the deadlines; instead, Plaintiffs waited until 128
days after the Defendants filed their motion to dismiss and 114
days after the Defendants filed the summary-judgment motion
before filing Plaintiffs' Objection to Defendants' Motion for
Summary Dismissal, which consists of a single paragraph (D.E.
36, PageID 178). Plaintiffs filed a Motion to File Evidence
which was late as well.

## Defendants' Motion to Dismiss

Pursuant to Federal Rule of Civil Procedure 12(b)(6),
Defendants move to dismiss the following claims, which the Court
will discuss in turn: loss of familial association, loss of
consortium, the individual-capacity claims against Mayor Gist
and Chief Wiser, Plaintiff's claims against the City of Jackson,
Fourteenth Amendment claims, conspiracy claims, Plaintiffs'
claims under Section 1981, individual claims against Childs and
Jones, claims for punitive damages against the City, and the
official-capacity claims against the individual Defendants.

1. Loss of familial association claim

Plaintiffs argue that they and Cinque DJahspora's family
"had a constitutional right of familial association [and] a
constitutional right to the society and companionship of
DJahspora." Complaint at § V, ¶ 22 (PageID 10). They state that
Defendants' actions violated these rights. *Id*. However, "'[A]

section 1983 cause of action is entirely personal to the direct victim of the alleged constitutional tort.'" *Foos v. City of Delaware*, 492 Fed. Appx. 582, 592 (6th Cir. 2012) (quoting *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000)). "Accordingly, only the purported victim, or his estate's representative(s), may prosecute a section 1983 claim[.]" *Claybrook v. Birchwell*, 199 F.3d at 357. One does not have a § 1983 cause of action "'for emotional distress, loss of a loved one, or any other consequent collateral injuries allegedly suffered personally by the victim's family members.'" *Foos v. City of Delaware*, 492, Fed. Appx. at 592-93 (quoting *Claybrook v. Birchwell*, 199 F.3d at 357). Because these are the types of losses that Plaintiffs are seeking to recover, and they do not have a cause of action for these damages, the Magistrate Judge recommends dismissal of this claim.

2. Loss of consortium claim under Section 1983

Plaintiffs claim that they have a loss-of-consortium claim arising out of the death of Cinque DJahspora. Complaint at § X (D.E. 1, PageID  13). But the Plaintiffs cannot recover damages for loss of consortium under § 1983. *See Blair v. Harris*, 993 F.Supp.2d 721, 730-32 (E.D.Mich. 2014); *Robinson v. City of Memphis*, 340 F.Supp.2d 864, 872 (W.D.Tenn. 2004). The Magistrate Judge therefore recommends dismissal of this claim.

3. Individual capacity claims against Mayor Gist and Chief
   Wiser

Supervisory officials can be liable in their individual capacity under Section 1983 only for their own unconstitutional behavior. *See Heyerman v. County of Calhoun*, 680 Fed.3d 642, 647 (6th Cir. 2012). This requires factual allegations that would allow the court reasonably to infer that Mayor Gist and Chief Wiser were involved in this incident. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* The same is true in supervisory liability claims, where supervisory liability requires more than the right to control the employees. *Id.* (citing *Leach v. Shelby County Sheriff*, 891 Fed.2d 1241, 1246 (6th Cir. 1989)). There must be "'a showing that the official either encouraged or in some other way directly participated in [the unconstitutional act].'" *Id.* at 822-23 (quoting *Leach v. Shelby County Sheriff*, 891 Fed.2d at 1246). "'At a minimum a plaintiff must show that the official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending [employees]." *Id.* In other words, the plaintiff must plead factual allegations that

would allow the court reasonably to infer "'that [the] Government-official defendant, through the individual's own individual actions, has violated the Constitution.'" Sh*erley v. Thompson*, 69 F.Supp.3d 656, 660 (W.D.Ky. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. at 676).

Here, as Defendants point out, Mayor Gist is only mentioned a handful of times. The allegations are conclusory; there are no factual allegations from which the Court could infer that Mayor Gist was personally involved or had contemporaneous knowledge of this incident. *See* Complaint at § 1, PageID 2 ,3 and ¶¶ 4, 23, and 24 (D.E. 1, PageID 2, 3, 4, and 10). Accordingly, the Magistrate Judge recommends dismissal of this claim.

While Chief Wiser is mentioned by name a few more times than Mayor Gist, those allegations are conclusory as well. *See* Complaint at § 1, PageID 2 and 3 and ¶¶ 5, 23, and 24 (D.E. 1, PageID 2, 3, 4, and 10). Accordingly, for the same reasons, the Magistrate Judge recommends dismissal.

4. Section 1983 Claim Against the City of Jackson

The City is liable only if Plaintiffs can show that the execution or implementation of the City's policies or customs caused their injuries. *Board of County Comm'rs v. Brown*, 520 U.S. 397, 416-17 (1997). To state a claim against the City, the Plaintiffs must do more than merely recite the elements of their

claims or make conclusory allegations about the existence of an unlawful policy or custom. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009). Here, Plaintiffs make several allegations against the City. Complaint at § I, PageID 1-2, ¶¶ 3, 25, 29, 30, and 31 (D.E. 1, PageID 1, 2, 11, and 12).

First, Plaintiffs say that the City had a policy or procedure of not adequately investigating instances of misconduct, including use of force, and this failure led to the constitutional violations alleged in their Complaint. Complaint at ¶¶ 29 and 30 (D.E. 1, PageID 11-12). However, there are no factual allegations that would allow the Court reasonably to infer that the City has a policy that caused the alleged constitutional violations. Plaintiffs' lack of factual allegations showing "a pattern of inadequate investigation of similar claims" is fatal to their failure-to-investigate claim. *Burgess v. Fischer*, 735 F.3d 462, 478-479 (6th Cir. 2013); *see also Thomas v. City of Chattanooga*, 398 F.3d 426, 433-434 (6th Cir. 2005). Without facts showing a pattern of similar incidents, the Court cannot draw the inference required by *Iqbal*. *See, e.g., Huff v. City of Camden*, 2009 WL 276770 at *6. As Defendants point out, these claims are at best legal conclusions. The Court need not accept these conclusory allegations as true. *See Sweat v. Butler*, 90 F.Supp.3d 773, 780

and 785 (W.D.Tenn. 2015). The Magistrate Judge agrees with Defendants that allowing Plaintiffs' case to proceed on conclusory allegations with no factual allegations to support their claims would collapse "the municipal standard [of deliberate indifference] into a simple *respondeat superior* standard." *Thomas v. City of Chattanooga*, 398 F.3d at 432-433.

Similarly, Plaintiffs claim that the City has a policy and procedure of "failing to adequately . . . punish and discipline prior instances of similar misconduct" and this caused the alleged constitutional violations. Complaint at ¶ 29 (D.E. 1, PageID 12). Plaintiffs have not alleged any facts to support their conclusory allegation, nor have they provided any substantive response to the Motion to Dismiss. Complaint (D.E. No. 1, PageID 1-15). Response (D.E. 36). Because there are no facts from which the Court could reasonably infer that the city had a policy of failing to discipline its employees, the Magistrate Judge recommends dismissal of the failure-to-discipline claim. *See Epperson v. City of Humboldt,* 140 F.Supp.3d at 676 at 686.

As for Plaintiffs' failure to supervise claim, Defendants correctly note that "the legal standards for a claim of inadequate supervision and one of inadequate training are essentially the same." *Sweat v. Butler*, 90 F.Supp.3d at 780

(citing *Okolo v.Metro. Gov. of Nashville*, 892 F.Supp.2d 931, 943 (M.D.Tenn. 2012)). A city is liable for inadequate training or supervision only if the city's deliberate indifference led to the inadequacy. *Id.* at 781 (quoting *Marcilis v. Twp. Of Redford*, 6963 F.3d 589, 605 (6th Cir. 2012)). This requires the plaintiff to "'show prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly onnotice that the training in this particular area was deficient and likely to cause injury.'" *Sweat v. Butler*, 90 F.Supp.3d at 781 (quoting *Savoie v. Martin*, 673 F.3d 488, 495 (6th Cir. 2012)). "'[P]laintiffs could show deliberate indifference through evidence of a single violation of federal rights, accompanied by a showing that the City had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation.'" *Id.* (citations omitted).

Here, Plaintiffs have not alleged facts that plausibly show that the City was aware of and ignored prior instances of unconstitutional behavior. Complaint (D.E.1, PageID 1-15). The absence of "facts that plausibly indicate that [the city] ignored prior instances of unconstitutional conduct such that it had notice of deficient training in the particular area" is fatal to Plaintiffs' claim. *Sweat v. Butler*, 90 F.Supp.3d at

781. Allegations that the City failed to supervise, "absent specific facts to support the claim, are insufficient" to state a claim. *Parker v. Henderson County*, 450 F.Supp.2d 842, 851 (W.D.Tenn. 2006). Furthermore, the Plaintiffs failure to sufficiently allege that the City's policymaker "had contemporaneous knowledge of the occurrence" and the lack of factual allegations suggesting "a 'prior pattern of similar incidents[ ]'" is fatal to the failure-to-supervise claim. *Id.* And again, Plaintiffs have not provided any meaningful response to this Motion. For these reasons the Magistrate Judge recommends dismissal of Plaintiffs' failure-to-supervise claim.

Plaintiffs allege that the City ratified the conduct that they allege violated the Constitution. Complaint at ¶ 25 (D.E. 1, PageID 11). To state a claim under a ratification theory, the Plaintiffs must allege facts showing that "'(1) a final policymaker approved an investigation . . . (2) so inadequate as to constitute a ratification of the [ ] alleged constitutional violation.'" *Sweat v. Butler*, 90 F.Supp.3d at 785. Because the Plaintiffs have not identified "an official with final decision-making authority, [or allege] that such an official approved an investigation," the Magistrate Judge recommends a finding that they have failed to state a claim under the ratification theory. *Id.* at 785-86.

5. Fourteenth Amendment Claim

"[W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998). The Fourth Amendment protects individuals from a police officer's use of excessive force during an arrest. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Because the Plaintiffs allege that their cause of action arose out of a police officer's use of excessive force during the officer's encounter with Cinque DJahspora (Complaint at ¶ 26 (D.E. 1), the Fourth Amendment, not the Fourteenth Amendment's substantive-due-process clause applies to this case. *See Epperson v. City of Humboldt*, 140 F.Supp.3d 676 at 687. Therefore, the Magistrate Judge recommends dismissal of the Plaintiffs' Fourteenth Amendment claim.

6. Conspiracy Claim

A conspiracy requires two or more persons. *See Wilder v. Hall*, 501 F.Supp.2d 887, 894 (E.D.Ky. 2007). Here, Plaintiffs allege that the individual defendants acted "[a]t all times pertinent hereto . . . under the color of state law and within the course and scope of [their] employment with the City. . . ."

Complaint at ¶¶ 6-9 (D.E. 1, PageID 4-5). Plaintiffs claim that part of the Defendants' actions in the course and scope of their employment was a conspiracy to shoot Cinque DJahspora and to cover up their actions. *Id*. at ¶¶ 21 and 23 (PageID 7). However, under the intra-corporate conspiracy doctrine, a City cannot conspire with its employees. *See Irons v. City of Bolivar*, 897 F.Supp.2d 665, 669 (W.D.Tenn. 2012). Because the individual defendants are employees or agents of the City and the Plaintiffs allege that they acted in the course and scope of their employment, the conspiracy claim fails under the intra-corporate conspiracy doctrine." *Id*. Additionally, the Magistrate Judge finds that Plaintiffs' conclusory claims do not meet the pleading standard for this claim. *See Wilder v. Hall,* 501 F.Supp.2d at 894 *(citing Farhat v. Jopke,* 370 F.3d 580, 599 (6th Cir. 2004)) (finding that a "§ 1983 conspiracy must be pled with some specificity"). For these reasons, the Magistrate Judge recommends dismissal of this claim.

7. Section 1981 Claim

The Plaintiffs allege that the Defendants are liable under 42 U.S.C. § 1981. Complaint at ¶ 11 (D.E. 1, PageID 6). This is the only time the Plaintiffs mention this statute. To state a claim under § 1981, the Plaintiffs must allege that they are members of a racial minority, the Defendants discriminated

13

against them on the basis of race, and that "the discrimination concerned one or more of the activities enumerated in" § 1981. *Burton v. Plastics Research Corp.*, 134 F.Supp.2d 881, 885 (E.D.Mich. 2001). Here, the Plaintiffs have not alleged any facts that plausibly state a § 1981 claim. Therefore, the Magistrate Judge recommends dismissal of the § 1981 claim. *See Johnson v. Harrell*, 142 F.3d 434 at *2 (6th Cir. 1998).

8. Claims Against Defendants Childs and Jones

Plaintiffs do not allege that Defendants Childs and Jones were present, knew about, or were involved in the events that the Plaintiffs allege violated DJahspora's civil rights. Complaint at ¶¶ 8 and 9 (D.E. No. 1, PageID 5). In paragraphs eight and nine, the Plaintiffs simply identify Childs and Jones as police officers who live in Madison County, Tennessee, and where they may be served. *Id.* Because the Plaintiffs do not allege any facts about Childs and Jones that plausibly state a claim against either of them, the Magistrate Judge recommends dismissal of the claims against them. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.")

9. Claims Against the City for Punitive Damages Under
   Section 1983

"Punitive damages are not recoverable from a municipality under § 1983." *Alexander v. Beale Street Blues Co., Inc.*, 108 F.Supp.2d 934, 950 (W.D.Tenn. 1999). Therefore, the Magistrate Judge recommend that the Court dismiss the Plaintiffs' § 1983 claim for punitive damages from the City.

10.  Official-capacity Claims Against the City of Jackson

Official-capacity claims against a city's employees are redundant when the city is a named defendant. *Epperson v. City of Humboldt*, 140 F.Supp.3d 676, at 683 (W.D.Tenn.). As Defendants note, here, as in Epperson, the City is a named defendant, and the Plaintiffs are also suing the City's employees in their official capacities. (Complaint (D.E. 1, PageID 1-15)). Therefore, the official-capacity claims are "'redundant' and 'superfluous'" and should be dismissed. *Epperson v. City of Humboldt,* 140 F.Supp.3d 676, at 683.

In sum, the Magistrate Judge recommends that Defendants' Motion to Dismiss be granted in full.

## Defendants' Motion for Summary Judgment

Defendants Bond and Boxley move the Court to enter an order granting them summary judgment because qualified immunity protects them from this lawsuit and the Plaintiffs cannot establish the elements of the state-law tort claims. As an

initial matter, Plaintiffs did not respond to this Motion other than to generally object and to state that they would "demonstrate with expert corroboration that will be submitted to the Court…that neither the video nor Defendant Bond's declaration accurately present the facts and truth…"[2], nor did they respond to Bond and Boxley's statement of material facts. Plaintiffs' Objection to Defendants' Motion for Summary Dismissal (D.E. 36, PageID 178). Accordingly, the Court should treat the facts as undisputed for purposes of the summary-judgment motion. *See Crouse v. Valdes*, 2015 WL 9463270 at *13 (W.D.Tenn.) (discussing the effect of failing to comply with Local Rule 56.1(b)(1)-(3)). Based on these undisputed facts, the Magistrate Judge recommends that the Court grant summary judgment.

## Statement of Facts

While on patrol, Officer Raymond Bond was responding to one call when he heard dispatch give a second call regarding a woman being attacked by a young man at Timberlake Estates. Declaration of Raymond Bond at ¶ 2-4 (attached as Exhibit 1). Bond was at the intersection of Campbell and North Parkway when he heard the second call and saw a young man—he later learned was Cinque DJahspora—fitting the description of the attacker. Id. at ¶ 4.

---

[2] And notably, the time for expert disclosure has passed and Plaintiffs have failed to submit anything additional to bolster this assertion.

Bond asked the dispatcher to repeat the description to confirm
that this person fit the attacker's description. Id. at ¶ 5.
Because this second call was a higher priority, Bond decided to
approach the young man who he suspected was involved in this
attack. Id. at ¶¶ 4-5. Because DJahspora seemed unaware of
anything except what was directly in front of him, Bond was
cautious. Id. at ¶ 5-6. Bond got out of his patrol car and
called to DJahspora to come to him so that Bond could
investigate the call. Id. at ¶ 7 and Video at 16:42:16.
Suddenly, DJahspora pulled out a hammer and began swinging it at
Bond. Id. at ¶ 8 and Video at 16:42:22. For his own protection,
Bond stepped back to put space between himself and DJahspora,
and when Bond stepped back, DJahspora threw the hammer at Bond.
Id. At ¶ 9, Video at 16:42:23, and Exhibit B (picture of hammer
in midair).

Bond decided to arrest DJahspora for throwing the hammer at
him and moved towards him to make the arrest. Id. at ¶¶9-10.
DJahspora came towards Bond and shouted "Shut the f _ _ k up."
Id. at ¶ 9, Video at 16:42:25. It was then that DJahspora pulled
a knife and stabbed Bond. Id. at ¶ 10, Video at 16:42:27.
Fearful that DJahspora would stab him in the neck or face, Bond
pushed DJahspora back and he fell to the ground. Id. at ¶¶10-11.
DJahspora got up and started coming towards Bond with the knife

still in his hand. Id. at ¶12, Video, and Exhibit C. Because
Bond was certain that DJahspora would attack again with the
knife, Bond then drew his weapon and fired at DJahspora for his
protection and that of others in the area. Id. at ¶¶12-15.

## Analysis

Where "no reasonable jury could believe the allegations
contained in the complaint . . . this Court [will] not adopt
that version of the facts in ruling on [the] motion for summary
judgment." *Burnette v. Kennamore*, 606 F.Supp.2d 827, 836
(W.D.Tenn. 2009) (citing *Scott v. Harris*, 550 U.S. 372, 127
S.Ct. 1769, 1776 (2007)). In *Burnette*, this Court rejected the
plaintiff's allegations because the record blatantly
contradicted the allegations. *Id.* Here, while the Complaint
paints the picture of a young man who was walking down the
street when he was blocked by a police officer, grabbed, and
shot and killed, the encounter between Bond and DJahspora is on
video, and the video shows the Court the undisputed facts as to
what happened, which are a stark departure from the allegations
of the Complaint.

The video shows that Officer Bond got out of his car and
called to DJahspora. Id. at ¶ 7 and video at 16:42:16. As
Officer Bond approached DJahspora (video at 16:42:19), DJahspora
swung a hammer at him. Id. at ¶8 and video at 16:42:22. Bond

stepped back to put some distance between DJahspora and himself. Id. at ¶ 9. DJahspora then threw the hammer at Bond. Id. at ¶ 9, video at 16:42:23, and still shot of hammer in midair (Exhibit B to Bond's Declaration). And DJahspora quickly followed his hammer throw by charging towards Bond and shouting "Shut the f_ _ k up." Id. and video at 16:42:25. As Officer Bond tries to take DJahspora into custody, DJahspora pulls a knife and stabs Bond. Id. at ¶ 10 and video at 16:42:27. Bond pushes DJahspora away from him and DJahspora goes to the ground. Id. at ¶¶ 10-11.

With the knife still in his hand, DJahspora started towards Bond again. Id. at ¶ 12, Video at 16:42:30, and Exhibit C. Bond drew his weapon and fired one shot. Id. at ¶¶ 13-15. As this unfolded, Officer Boxley arrived and as DJahspora was starting to come at Bond for the final time, Officer Boxley yelled "He's got a knife man." Id. at ¶ 17 and video at 16:42:29-30.

Qualified immunity protects police officers "'from liability for civil damages in so far as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1983)). Although qualified immunity does not protect officers when they abuse their power, it shields officers "from harassment, distraction, and liability when they perform their

duties reasonably." *Id.* To ensure that the immunity is not lost, courts must resolve the issue at the earliest possible stage. *Id.* The qualified-immunity analysis comprises two questions: (1) did the officer violate a constitutional right? (2) Was the right clearly established? *Id.* at 232 (discussing *Saucier v. Katz*, 533 U.S. 194 (2001)). Based on the circumstances of the case, the courts decide, in their discretion, the question to be answered first. *Id.* at 236. Here, the only question the Court need address is the question of whether Bond or Boxley violated a constitutional right. The courts have long recognized that the Constitution prohibits police officers from seizing persons by using deadly force that is not reasonable. *See Tennessee v. Garner*, 471 U.S. 1, 7 (1985). This reasonableness requirement permits officers to use such force as is "'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). Deciding the reasonableness of the force used, courts must carefully balance "'the nature and quality of the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396 (citations omitted). This determination, however, cannot be made with the clarity of hindsight from "the peace of a judge's chambers[.]" *Id.* at 394. Rather, this determination must be made in recognition of "the fact that

police officers are often forced to make split-second judgments—
in circumstances that are tense, uncertain, and rapidly
evolving[.]" *Id.* at 396-97. Because "[t]he intrusiveness of a
seizure by means of deadly force is unmatched[,]" deadly force
is reasonable only if "the officer has probable cause to believe
that the suspect poses a significant threat of death or serious
physical injury to the officer or others." *Garner*, 471 U.S. at
3.

When the Court applies this standard to the case at hand,
it is clear that Officer Bond's use of deadly force was
reasonable and that qualified immunity applies. DJahspora swung
a hammer at Bond, threw a hammer at him, and then pulled a knife
and stabbed Officer Bond. Declaration of Officer Bond at ¶¶ 7-10
and Exhibits A and B. And after DJahspora threw the hammer,
Officer Bond tried to take DJahspora into custody; but DJahspora
stabbed him. Id. at ¶ 10. Following DJahspora's escalation of
this encounter, Officer Bond continued to try and take DJahspora
into custody. In doing so, he put DJahspora on the ground. But
rather than surrendering, DJahspora started getting up and
coming back towards Officer Bond with the knife still in his
hand. Id. at ¶¶ 11-12, Video at 16:42:30, and Exhibit C. Knowing
that DJahspora had attacked him with a hammer and stabbed him
only seconds earlier, Officer Bond had probable cause to believe

that DJahspora posed a significant threat of death or further serious injury to Bond or to others in the area. Under these circumstances, Officer Bond's use of deadly force was objectively reasonable and not a violation of the Fourth Amendment. *See Chappell v. City of Cleveland*, 585 F.3d 901, 915-16 (6th Cir. 2009) (Finding that qualified immunity protected two detectives who shot a knife-wielding man because they reasonably perceived the man to pose an "imminent threat of serious bodily harm."); *Untalan v. City of Lorain*, 430 F.3d 312, 315 (6th Cir. 2005) ("Within a few seconds of reasonably perceiving a sufficient danger, officers may use deadly force . . . .")

Further, as Defendants note, for a jury to decide in favor of the Plaintiffs, it would have to conclude that DJahspora did not pose a serious and immediate threat to the safety of others. The video shows that a no reasonable jury could disagree with Officer Bond's conclusion that DJahspora posed a serious and immediate threat to the safety of Bond and others. *Untalan v. City of Lorain*, 430 F.3d at 315.

In regards to Officer Boxley, the video and Officer Bond's declaration show that Officer Boxley arrived on the scene in time to witness the shooting. The video shows that Boxley did not do anything other than come to the assistance of Officer

Bond. The Magistrate Judge finds that it is clear that Officer Boxley did not violate a constitutional right, and that it is clear that qualified immunity applies.

Plaintiffs also allege the common law claims of assault and battery. "'[a] battery necessarily requires an unpermitted touching of the plaintiff by the defendant or by some object set in motion by the defendant.'" *Brown v. Christian Brothers University*, 428 S.W.3d 38, 57 (Tenn. Ct. App. 2013) (quoting *Cary v. Arrowsmith*, 177 S.W.2d 8, 21 (Tenn. Ct. App. 1989)). The contact at issue must be such "that [it] infringes on a reasonable sense of personal dignity ordinarily respected in civil society." *Id.* (citation omitted). For example, one being arrested does not consent to being touched by the police officer, but the police officer's touching in the course of an arrest does not infringe"on a reasonable sense of personal dignity ordinarily respected in civil society." Hence, the police privilege protects from claims of assault and battery an officer who uses "reasonable force" *Id.* at 58. As previously discussed, Officer Bond's use of force was reasonable. Therefore, the Plaintiffs cannot satisfy the elements of common-law battery or assault.

Likewise, Plaintiffs cannot establish the elements of intentional infliction of emotional distress nor can they

establish negligent infliction of emotional distress. "The
elements of an intentional infliction of emotional distress
claim are that the defendant's conduct was (1) intentional or
reckless, (2) so outrageous that it is not tolerated by
civilized society, and (3) resulted in serious mental injury to
the plaintiff." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196,
205 (Tenn. 2012) (citations omitted). A police officer's use of
deadly force is reasonable where "the officer has probable cause
to believe that the suspect poses a significant threat of death
or serious physical injury to the officer or others." *Garner*,
471 U.S. at 3; *see also* Tenn. Code Ann. § 39-11-620. A negligent
infliction of emotional distress claim, "requires that the
plaintiff establish the elements of a general negligence claim:
(1) duty, (2) breach of duty, (3) injury or loss, (4) causation
in fact, and (5) proximate causation." *Lourcey v. Estate of
Scarlett*, 146 S.W.3d 48, 52 (Tenn. 2004) (citation omitted).

In this case, the record, and the video, clearly show that
Officer Bond had probable cause to believe that DJahspora posed
a significant threat to Bond and to others in the area. Under
the circumstances, the force used by Bond was justified;
therefore, it was not "conduct so outrageous that it is not
tolerated by civilized society." Any claim for intentional
inflection of emotional distress or outrageous conduct must

therefore fail as a matter of law. *Lane v. Becker*, 334 S.W.3d 756, 762 n. 3 (Tenn.Ct.App. 2010) ("intentional infliction of emotional distress and outrageous conduct are different names for the same tort"). The negligent infliction of emotional distress claim fails as well; Plaintiffs cannot establish that Officer Bond breached a duty owed to them – as has been shown, his use of deadly force was reasonable under the circumstances. As Defendants point out, it was DJahspora who caused the escalation of the encounter to the point that Bond was forced to use deadly force. Declaration of Officer Bond at Exhibit A. The video shows Bond approaching DJahspora and trying to talk to him just before DJahspora attacks with a hammer and then stabs the officer with a knife.

For all of these reasons, the Magistrate Judge recommends that Defendants' Motion for Summary Judgment be granted.

## Plaintiffs' Motion to Enter Evidence re: Objection to Defense Motion to Dismiss

Finally before the Magistrate Judge is Plaintiffs' request to enter into evidence the Shoot Team Interview of Bond. While Plaintiffs claim this interview contradicts the video in this matter, they provide no actual argument to this effect, ostensibly leaving it to the Court to search for inconsistencies. And as Defendants note, when the Court has an

unambiguous video recording, as it does in this case, it must

"view the facts in the light depicted by the videotape . . . ."

*Green v. Throckmorton*, 681 F.3d 853, 859 (6th Cir. 2012).

Regardless, the Magistrate Judge recommends that this Motion be

denied because it has not been authenticated, and because it is

late-filed (to the extent that it is a response to the motion to

dismiss and motion for summary judgment). *See Alexander v.*

*CareSource,* 576 F.3d 551, 561 (6th Cir. 2009) (affirming the

district court's decision not to consider unauthenticated

documents offered in opposition to summary judgment).

<u>CONCLUSION</u>

For all these reasons, the Magistrate Judge recommends that

the Court grant Defendants' Motion to Dismiss and Motion for

Summary Judgment in their entirety, and deny Plaintiffs' Motion

to Enter Evidence.

Respectfully Submitted this 30th day of August, 2016.

**<u>s/Edward G. Bryant</u>**
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT AND RECOMMENDATION MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT AND RECOMMENDATION.  28 U.S.C. § 636(b)(1). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**